**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**FRED DIGGS,**

     **Petitioner,**

     **v.**

**WARDEN, NOBLE
CORRECTIONAL INSTITUTION,**

     **Respondent.**

                **CASE NO. 2:15-CV-02117
                JUDGE GREGORY L. FROST
                Magistrate Judge Elizabeth A. Preston Deavers**

**OPINION AND ORDER**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply and the exhibits of the parties.

For the reasons that follow, the petition for a writ of habeas corpus is **DENIED** and this action is hereby **DISMISSED**.

**I.**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Through an indictment filed September 18, 2013, the state charged appellant with (1) one count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11, (2) one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01, (3) one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01, (4) one count of robbery, a felony of the second degree, in violation of R.C. 2911.02, (5) one count of robbery, a felony of the third degree, in violation of R.C. 2911.02, and (6) one count of failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331. Counts 1 through 5 all included accompanying firearm specifications. Additionally, the first five counts were indicted under a complicity theory along with two co-defendants.

The indicted offenses all related to the events of April 29, 2013 involving a home invasion robbery and the subsequent high-speed car chase. Appellant entered a plea of not guilty to all six counts.

At a jury trial commencing October 7, 2013, the victim, Markesha Gravely, testified that on the day of April 29, 2013, she was home with her two young children when a man forced his way into her home and demanded she give him money at gunpoint. The man told her "your husband, GY, is the one who sent me." (Tr. Vol.I, 72.) Markesha gave the man two water jugs being used as her children's piggy banks, and the man also demanded her cell phone. Before exiting her home, Markesha testified the man said "I should kill your daughter," and he fired his revolver into the floor near where Markesha's three-year-old daughter was standing. (Tr. Vol.I, 75.) Markesha immediately dialed 911 from her house phone and attempted to chase the man down the street. The state played a recording of Markesha's 911 call in court during which Markesha gave a description of the man to the 911 operator. When she hung up with the 911 operator, Markesha called her husband and described what had just happened and told her husband where the man was running. After the police informed Markesha they had made an arrest that day, Markesha identified the man who forced his way into her home and robbed her at gunpoint as Josias Smith.

Markesha's husband, Demetris Gravely, also testified. Demetris stated he had spent time in prison and, during that time, he earned the nickname "Graveyard," which was eventually shortened to "GY." (Tr. Vol.I, 109.) Demetris testified that on the day of April 29, 2013, he was driving back to his house when his wife called him to tell him they had just been robbed and that the man who held her at gunpoint was running away toward Tamarack Boulevard. Markesha gave Demetris a description of the man, and Demetris stated he started driving in that direction "looking for anybody with a gray shirt or a gray hoodie." (Tr. Vol.I, 112.) He eventually spotted a man who matched the description and saw him toss a bag into a waiting vehicle and then jump in through the rear driver's side door of the vehicle before it sped off. Demetris testified the car took off instantly after the man jumped in without any delay, as though the vehicle "was waiting for him." (Tr. Vol.I, 116.) Demetris followed the vehicle and called 911 for assistance in his pursuit. The vehicle was traveling faster than the posted speed limits and was running through red lights, and Demetris continued to follow it until police arrived.

After police pursued and arrested the three occupants of the vehicle, Demetris identified appellant as the driver of the vehicle.

Demetris also identified the man he saw running and who jumped into the waiting vehicle as Smith. Though Demetris stated he had never seen Smith prior to the day of the robbery, he testified he knew relatives of appellant and that those relatives knew he went by the nickname "GY."

Officer Delner Twitty of the Columbus Police Department testified he was on duty on April 29, 2013 when he heard about the vehicle from Demetris' 911 call on his police cruiser radio. There were several cruisers responding to this incident, and Officer Twitty eventually saw the suspect vehicle driving southbound on Ambleside Drive near East Dublin–Granville Road. Officer Twitty turned on his lights and siren and pursued the vehicle. The vehicle did not attempt to stop but instead increased its speed and attempted to evade Officer Twitty's cruiser. The high-speed chase continued until Officer Twitty turned right to attempt to cut off the vehicle's path, and another police cruiser continued in direct pursuit of the vehicle. Officer Twitty received word that the suspects had bailed out of the car and were running away on foot.

The state then played the police cruiser video recording from the cruiser that stopped directly behind the suspect vehicle when the vehicle stopped and the occupants got out and fled on foot. Officer David Weisgerber testified that after pursuing the suspect vehicle, he saw two individuals running in between houses, so he got out of his cruiser and pursued them on foot. Officer Adam Worthington testified he detained Smith as soon as Smith exited the suspect vehicle. Officer Worthington did not find a firearm on Smith's person or in the vehicle after he was arrested.

Officer Allen Troutman testified that after setting up a perimeter to search for the two suspects who had fled on foot, one of the men eventually reemerged between the houses, running and covered in mud. Officer Troutman arrested the man, and he subsequently identified that man as appellant. Several hours later, another officer apprehended the third occupant of the vehicle, Jazzjuan Moore. Police recovered from the suspect vehicle the plastic bottles with money and the cell phone taken from Markesha. No firearm was ever recovered.

Appellant also testified at trial and stated he had no involvement in Smith's criminal activities on April 29, 2013. While appellant testified he has known Moore for over ten years, he stated he only knew of Smith and did not converse with him often. According to appellant's testimony, on the day of the home invasion, appellant was sitting in his car with Moore rolling marijuana cigarettes when

3

they unexpectedly saw Smith running down the street carrying a gun and a trash bag. Appellant stated Smith jumped in his car without permission and demanded that appellant drive while threatening him with a gun. Appellant did not deny that he drove the vehicle with Smith in the car or that he disobeyed signals from the police to pull over; rather, he testified he only did those things because Smith was threatening him with a gun and he feared for his life.

After deliberations, the jury returned guilty verdicts for the charges of aggravated burglary, aggravated robbery, second-degree felony robbery, third-degree felony robbery, all with the accompanying firearm specification, as well as a guilty verdict for the charge of failure to comply with an order or signal of a police officer. The jury found appellant not guilty as to the kidnapping charge. Following a December 13, 2013 sentencing hearing, the trial court sentenced appellant to a total of 21 years in prison. The trial court journalized appellant's convictions and sentence in a January 6, 2014 amended judgment entry.  Appellant timely appeals.

II. Assignments of Error

Appellant assigns three assignments of error for our review:

[1.] The evidence presented at trial was insufficient to support the convictions.

[2.] The trial court erred when it overruled appellant's motion for acquittal pursuant to Criminal Rule 29.

[3.] The jury's verdicts were against the manifest weight of the evidence.

*State v. Diggs*, No. 14AP-18, 2014 WL 3805764, at *1-3 (Ohio App. 10th Dist. July 31, 2014).

On July 31, 2014, the appellate court affirmed the judgment of the trial court.  *Id*.  On April 29, 2015, the Ohio Supreme Court declined jurisdiction of the appeal.  *State v. Diggs*, 142 Ohio St.3d 1447 (Ohio 2015).

On September 30, 2014, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  (ECF No. 7-1, PageID# 226.)  Petitioner asserted that he had been denied effective assistance of appellate counsel because his attorney failed to raise on appeal a

claim that his convictions and firearm specifications should have been merged at sentencing.  *See* Memorandum Decision (ECF No. 7-1, PageID# 255.)  On November 20, 2014, the appellate court denied the application.  *Id*.  On March 11, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  (PageID# 297.)

On May 20, 2015, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that the evidence is constitutionally insufficient to sustain his convictions and that the trial court erred in overruling his motion for judgment of acquittal (claims one and two) and that he was denied the effective assistance of appellate counsel (claim three).  It is the position of the Respondent that Petitioner's claims lack merit.

## II.

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⎯⎯ U.S. ⎯⎯, ⎯⎯, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . .  imposes a highly deferential standard for evaluating state-court rulings, and demands that statecourt decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . .  [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) (" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

### III.

**A.  Claims One and Two**

In claims one and two, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions on aggravated burglary, aggravated robbery, and robbery.  Petitioner argues that the State failed to produce sufficient evidence connecting him to Smith or to the alleged victims so as to establish his guilt as an aider and abettor.  He also maintains that the State failed to produce sufficient evidence to establish he possessed a firearm.  Petitioner additionally asserts that the trial court erred in overruling his motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.[1]

The state appellate court rejected Petitioner's claim in relevant part as follows:

---

[1] Rule 29 of the Ohio Rules of Criminal Procedure provides:

(A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

(B) Reservation of Decision on Motion. If a motion for a judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict, or after it returns a verdict of guilty, or after it is discharged without having returned a verdict.

(C) Motion After Verdict or Discharge of Jury. If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned, the court may enter judgment of acquittal. It shall not be a prerequisite to the making of such motion that a similar motion has been made prior to the submission of the case to the jury.

[A]ppellant argues there was insufficient evidence to convict him of aggravated burglary, aggravated robbery, and the two robbery counts. Appellant does not challenge the sufficiency of the evidence as it relates to Count 5 of the indictment, failure to comply with the order or signal of a police officer.

Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v.. Mahone*, 10th Dist. No. 12AP–545, 2014–Ohio–1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006–Ohio–2417, ¶ 37.

Appellant was indicted as an accomplice of the principal offender, Smith, for the charges of aggravated burglary, aggravated robbery, and the two robbery charges. Appellant does not argue that the state failed to prove the elements of those offenses as to Smith; rather, appellant argues the state failed to prove the elements of appellant's involvement in those offenses under a complicity theory. All of the offenses relate to the same home-invasion robbery of the Gravelys' home on April 29, 2013.

R.C. 2923.03, Ohio's complicity statute, provides, in pertinent part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of [R.C. 2923.01];

(4) Cause an innocent or irresponsible person to commit the offense.
. . .

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

Appellant asserts there was insufficient evidence that would allow any rational trier of fact to come to the conclusion that appellant aided or abetted Smith in the commission of the offenses.

"To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "An aider or abettor must also 'share[ ] the criminal intent of the principal,' but '[s]uch intent may be inferred from the circumstances surrounding the crime' such as 'presence, companionship and conduct before and after the offense is committed.'" *State v. Kendricks*, 10th Dist. No. 10AP–114, 2010–Ohio–6041, ¶ 16, quoting *Johnson* at syllabus, and *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971).

A.  Aggravated Burglary

Pursuant to R.C. 2911.11(A)(1) and (2), "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense" if either "[t]he offender inflicts, or attempts or threatens to inflict physical harm on another," or "[t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." The culpable mental state for aggravated burglary is "purposeful." *State v. Fry*, 125 Ohio St.3d 163, 2010–Ohio–1017, ¶ 44, citing *State v. Conley*, 4th Dist. No. 08CA784, 2009–Ohio–1848, ¶ 40.

Markesha testified that Smith pointed his gun at her as he forced his way into her home, and appellant does not dispute that Smith brandished a weapon during the burglary. The sole issue, then, is whether there was sufficient evidence to show appellant purposely aided or abetted Smith in the commission of the aggravated burglary.

Appellant argues there was little evidence suggesting he had any connection to Smith prior to the burglary, let alone that he aided and abetted Smith in the commission of the aggravated burglary. However, direct evidence of their relationship prior to the commission of the crimes is not necessary, as "'[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" (Emphasis

10

added.) *State v. Phipps*, 10th Dist. No. 03AP–533, 2004–Ohio–3226, ¶ 14, quoting *Johnson* at 245, quoting *Pruett* at 34. Nonetheless, appellant admitted to knowing Smith, and he testified that both he and Moore, the other co-defendant and the man who was in the car with him that day, lived near the Gravelys. Appellant also admitted to knowing someone who spent time in prison with Demetris Gravely. Further, when Smith ran from the Gravelys' home, he went immediately to the nearby idling vehicle in which appellant was the driver. As the driver, appellant then led police on a high-speed chase to elude capture.

The only conflicting evidence was appellant's self-serving testimony that it was sheer coincidence that he was sitting in his idling car near the crime scene and that he was forced to drive away at gunpoint, which the jury was free to disbelieve. Appellant also argues it was too great of a leap to make that the only way Smith could have learned Demetris Gravely's prison nickname, GY, was for appellant to have told Smith because there was no direct evidence that appellant conspired with Smith before the home invasion or provided Smith with information about their target. However, "[u]nder Ohio law, * * * circumstantial evidence can have the same probative value as direct evidence, and '[a] conviction can be sustained on circumstantial evidence alone.'" *State v. Fausnaugh*, 10th Dist. No. 11AP–842, 2012–Ohio–4414, ¶ 26, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991).

We conclude that, when construing the evidence in a light most favorable to the prosecution, appellant's presence very near the crime scene combined with his conduct after the commission of the offenses was sufficient evidence allowing a rational trier of fact to find, beyond a reasonable doubt, that appellant purposely supported and assisted Smith and shared Smith's criminal intent in his effort to forcibly enter the Gravelys' home and deprive Markesha Gravely of her property without her consent when he drove the getaway car after Smith fled from the Gravelys' home.

B.  Aggravated Robbery

Under R.C. 2911.01(A)(1), aggravated robbery where the offender has a deadly weapon on or about their person while committing a theft offense is a strict liability offense. *Kendricks* at ¶ 17, citing *State v. Lester,* 123 Ohio St.3d 396, 2009–Ohio–4225, ¶ 32. Further, aggravated robbery under R.C. 2911.01(A)(3), where an offender inflicts or attempts to inflict serious physical harm on another while committing a theft offense, is also a strict liability offense. *Id*., citing *State v. Horner*, 126 Ohio St.3d 466, 2010–

Ohio–3830, ¶ 53. As to the theft aspect of the offense of aggravated robbery, the culpable mental state is "knowingly." *Id*., citing *Horner* at ¶ 49. A person acts knowingly when he is "aware that his conduct will probably cause a certain result or will probably be of a certain nature," while a person "has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

Markesha testified that Smith, the principal offender, brandished a weapon during the robbery and that he discharged that weapon into the floor. Appellant does not dispute that Smith brandished a weapon during the theft offense. Similar to his argument as to the aggravated burglary charge, appellant argues there was insufficient evidence to permit a finding that he knowingly aided and abetted Smith in the commission of the aggravated robbery.

"When knowledge suffices to establish an element of an offense, then purpose is also sufficient culpability." R.C. 2901 .22(E). Thus, where there is sufficient evidence to conclude that a defendant acted purposely, there is also sufficient evidence to establish that he acted knowingly. *State v. Overton*, 10th Dist. No. 09AP–858, 2011–Ohio–4204, ¶ 9, citing R.C. 2901.22(E). As we have already determined the evidence was sufficient to allow a rational trier of fact to find appellant acted purposefully in aiding and abetting the aggravated burglary, it follows that the evidence is also sufficient to find appellant acted knowingly in aiding and abetting the aggravated robbery as both offenses stem from the common scheme of the home-invasion robbery.

C. Robbery

R.C. 2911.02(A)(1) to (3), Ohio's robbery statute, provides "[n]o person, in attempting or committing a theft offense or in fleeing immediately after" shall "[h]ave a deadly weapon on or about the offender's person," "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another," or "[u]se or threaten the immediate use of force against another." The culpable mental state for robbery is "recklessly." *State v. Easley*, 10th Dist. No. 08AP–755, 2009–Ohio–2984, ¶ 27.

In demonstrating appellant purposely aided and abetted the commission of the aggravated burglary and knowingly aided and abetted the aggravated robbery, the state necessarily met its burden of demonstrating appellant recklessly aided and abetted the commission of the two robbery counts as all of these charges stemmed from the home-invasion robbery of the Gravelys'

residence. *State v. Blackburn*, 10th Dist. No. 12AP–217, 2012–Ohio–6229, ¶ 13, citing R.C. 2901.22(E).

Accordingly, because there was sufficient evidence to sustain appellant's convictions for aggravated burglary, aggravated robbery, and the two robbery counts, we overrule appellant's first assignment of error.

*State v. Diggs*, 2014 WL 3805764, at *3-6.

To the extent that Petitioner raises a claim regarding violations of the Ohio Criminal Rules, such claim fails to provide a basis for relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir.1990) (*en*

*banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson,* 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03P0002, 2007 WL 3005746 (S.D.Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St.3d 259 (1991). Of course, it is state law that determines the elements of offenses. Once once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No 104–132, 110 Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> "In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a

> petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a habeas case, a claim regarding the sufficiency of the evidence, the Court must afford deference to the trier-of-fact's verdict under *Jackson v. Virginia* and again then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury-- not the court-- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. ——, ——, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson,* 566 U.S. ——, ——, 132 S.Ct. 2060, 2062 (2012) (*per curiam*). This hurdle is a difficult one to surmount. And here, the Court is not persuaded that Petitioner has done so here.

Demetris Gravely watched Smith jump into a nearby idling car where Petitioner was seated as the driver after commission of the underlying offenses. "[W]hen Smith ran from the Gravely's home, he went immediately to the nearby idling vehicle in which [Petitioner] was the driver." *State v. Diggs*, 2013 WL 3805764, at *4. The vehicle immediately sped off, as if it had been waiting for Smith. Petitioner then led police on a high speed chase to elude capture, and continued to flee police on foot after exiting the car. Further, Petitioner knew someone who had

15

spent time in prison with Gravely, and thereby could have known Gravely's nickname "GY," as had been referred to by Smith.  When viewing this evidence in the light most favorable to the prosecution, the Court is not persuaded that the jury acted unreasonably in disbelieving Petitioner's explanation that he was merely an innocent bystander who had no involvement in the crimes charged, but happened to be in the wrong place at the wrong time.  "In assessing the proof, a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).  Further,

> [o]ne who participates in the commission of the crime of bank robbery by serving as the driver of the escape or 'gataway' car is to be held accountable as an aider or abettor. *See, e.g., United States v. Hopkins,* 486 F.2d 360 (9th Cir. 1973); *United States v. Simmons*, 281 F.2d 354 (2nd Cir. 1959). Similarly, one who is the driver and 'lookout' or simply a 'lookout' aids and abets the commission of a crime. *See, e.g., United States v. May*, 419 F.2d 553 (8th Cir. 1969); *United States v. Irons*, 475 F.2d 40 (8th Cir. 1973). One who takes another to the scene of the crime and assists the active culprit to get away cannot claim innocence. 22 C.J.S. Criminal Law § 88(2), p. 263 (1961). See also, 1 Anderson, Wharton's Criminal Law and Procedure, § 109, 232 (1957). . . . *United States v. Hopkins*, 486 F.2d 360 (9th Cir. 1973)[.]

*United States v. Jarboe,* 374 F.Supp. 310, 314-15 (W.D. Miss. 1974).

Given the deference of this Court's review, the Court concludes that both a reasonable jury and a reasonable state court could have found that Petitioner aided and abetted Smith in commission of the crimes charged, and acted as the driver of the getaway vehicle lying in wait for Smith to make his escape.  Petitioner's flight from police may also have been viewed as circumstantial evidence of guilt.  *See United States v. White*, 543 F. App'x. 563, 567 (6th Cir. 2013) (generally evidence of flight is admitted as "an admission of guilt by conduct") (citing *United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005)).    The fact that police were unable to

locate the gun used by Smith does not alter this conclusion.  The jury was within its province to disbelieve Petitioner's excuse that Smith was compelling him to act at gunpoint.  Petitioner's connection to Smith as an aider and abettor was established through Petitioner's participation in the actions of the offenses charged.

Claims one and two are without merit.

## B. Claim Three

In claim three, Petitioner asserts that he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that his convictions violated the Double Jeopardy Clause and should have been merged for sentencing purposes.  The state appellate court rejected this claim in relevant part as follows:

> Appellant argues his appellate counsel was ineffective for failing to assign as error the trial court's alleged failure to merge some of appellant's convictions for purposes of sentencing.  From what we can discern from his application, appellant suggests his appellate counsel should have argued (1) that appellant's aggravated burglary and aggravated robbery convictions should merge, (2) that all of the felonies should merge, and (3) that all of the firearm specifications should merge with the felonies they accompany.  All three of appellant's arguments have a common thread: he suggests that because he was not the principal offender, with the exception of the failure to comply with the order or signal of a police officer conviction, the court should view all of these crimes as having a common animus.

> Appellant's arguments are inconsistent with the applicable law.  "The federal and state constitutions' double jeopardy protection guards citizens against cumulative punishments for the 'same offense.'"  *State v. Hall,* 10th Dist. No. 05AP-957, 2006-Ohio-2742, ¶ 16, citing *State v. Moss*, 69 Ohio St.2d 515, 518 (1982).  Consistent with those provisions, Ohio's multiple count statute, R.C. 2941.25, states that where a defendant's same conduct "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  R.C. 2941.25(A).

This court has "'consistently applied the two-part test set forth in the [*State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314,] plurality opinion when conducting allied-offense analysis.'" *State v. Phipps*, 10th Dist. No. 13AP-640. . . . *Johnson* stands for the proposition that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*. at syllabus.

Under the two-part *Johnson* analysis, "we first examine whether the offenses are able to be committed with the same conduct." *Damron* at ¶ 11. If it is possible for an offender to commit both offenses with the same conduct, the *Johnson* test then requires the court to determine whether the offenses were, in fact, committed by the same conduct. *Phipps* at ¶ 63. The "same conduct" is " 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. Conversely, the offenses with not merge if the court determines "that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense." (Emphasis sic.) *Johnson* at ¶ 51.

Using the above framework, none of appellant's three arguments have merit. First, "aggravated burglary and aggravated robbery are not allied offenses of similar import where the two offenses were committed through separate conduct." *State v. Dennison*, 10th Dist. No. 12AP718, 2013-Ohio-1676, ¶ 82, citing *State v. Broomfield*, 10th Dist. No. 12AP-469, 2013-Ohio-1767, ¶ 23 (stating aggravated robbery and aggravated burglary are "committed through separate conduct and they do not merge" because the defendant "committed aggravated burglary by forcing his way into the residence," and "[h]e committed aggravated robbery * * * by demanding and taking money or property from" the victim); *State v. Linde*, 9th Dist. No. 26714, 2013-Ohio-3503, ¶ 18 (stating that "[s]ince *Johnson*, numerous appellate courts have determined that aggravated robbery and aggravated burglary are not allied offenses of similar import because an aggravated burglary is complete upon an offender's forced entrance and an aggravated robbery requires additional conduct"). Appellant nonetheless argues that the offenses of aggravated burglary and aggravated robbery as applied to him should merge because his conduct remained the same: sitting in a car while Josias Smith entered the victim's residence and robbed her at gunpoint. However, R.C. 2923.03, Ohio's complicity statute, is clear that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be

prosecuted and punished as if he were a principal offender." R.C. 2923.03(F). Thus, because the offenses of aggravated burglary and aggravated robbery would not merge for the principal offender, Smith, in this case, those offenses similarly do not merge as they relate to appellant under the complicity theory.

Appellant's argument that all the felony convictions should merge similarly fails. Appellant again relies on his erroneous theory that the conduct of Smith should have no bearing on his own conduct for purposes of merger. R.C. 2923.03(F) provides otherwise, and appellant points to no authority suggesting that his role as the self-described "getaway driver" somehow renders all of the offenses in his indictment allied offenses of similar import.

Lastly, appellant argues the firearm specifications should merge with the underlying felonies. Again, appellant relies on a theory that because Smith possessed and used the gun, the specifications should not apply to appellant. The complicity statute requires a different conclusion. Further, pursuant to R.C. 2929.14(B)(1)(g) and 2929.14(C)(1)(a), the trial court was required to sentence appellant to two firearm specifications to be served consecutively to each other. *Dennison* at ¶ 86-91 (concluding that when an offender is convicted of two or more felonies and one of those felonies is aggravated robbery, then the trial court is required to follow the mandate established in R.C. 2929.14(B)(1)(g) that a separate prison term be imposed for each of the two most serious firearm specifications), citing *State v. Lewis*, 11th Dist. No. 2012-L-074, 2013-Ohio-3974, ¶ 100-04; *Carson* at ¶ 8-11.

In sum, none of appellant's arguments have merit, and appellant thus fails to establish either prong of the *Strickland* analysis. Accordingly, appellant's appellate counsel was not ineffective for failing to raise the merger issue on appeal.

*Memorandum Decision* (ECF No. 7-1, PageID# 256-59.)

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the

> defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. Both standards created by Strickland and § 2254(d) are "highly deferential."  *Strickland*, 466 U.S. at 689.  When *Strickland* and § 2254(d) "apply in tandem," review is "doubly" deferential.  *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct., 1411, 1420 (2009).  Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.  To establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781–82 (1987).  Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985).  The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail,

far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751–52). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. (citing *Wilson*). If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id*. (citing *Wilson*). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161–62 (6th Cir. 1994)). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). "Counsel's performance is strongly presumed to be effective." *McFarland,* (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) (citing *Strickland*)). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)).

Petitioner argues, essentially, that he committed only one act (*i.e.,* acting as the getaway driver), and therefore that his convictions on aggravated burglary, aggravated robbery, and robbery, as well as the accompanying firearm specifications, should have been merged at sentencing under Ohio law, and the Double Jeopardy Clause. However, the state appellate court rejected Petitioner's claim that Ohio law required merger of his convictions for sentencing purposes. Petitioner therefore cannot establish the denial of the effective assistance of counsel to raise such issue on appeal.

Further, the record likewise fails to reflect a violation of the Double Jeopardy Clause.[2] The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States,* 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger,* the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

However, "the Double Jeopardy Clause does not prohibit multiple punishments for the same conduct when the legislature intends to impose cumulative penalties." *Dothard v.*

---

[2] Although the state appellate court rejected Petitioner's claims by reference to Ohio's statute on allied offenses, specifically Ohio Revised Code § 2941.25, as defined by the Ohio Supreme Court, and did not explicitly refer to federal law addressing the constitutional prohibitions set forth under the Double Jeopardy Clause, this Court previously has concluded that Ohio law in this regard is derived from the same concerns as that of the Double Jeopardy Clause. *See, e.g. Cody v. Jeffreys*, No. 2: 10–cv–974, 2013 WL 170268 at *4–*5 (S.D. Ohio Jan.16, 2013) (citing *Palmer v. Haviland*, No. C–1–04–28, 2006 WL 1308219 (S.D. Ohio May 11, 2006); *Spence v. Sheets*, 675 F.Supp.2d 792 (S.D. Ohio 2009); *Helton v. Jeffreys*, No.2:06–cv–558, 2007 WL 1100428, at *4–*5 (S.D. Ohio April 10, 2007). The state court's decision rejecting Petitioner's claim, though couched in terms of state law, thus is entitled to deference in this Court's consideration of Petitioner's federal constitutional claim.

*MacLaren,* 2015 WL 470585, at *7 (E.D. Mich. Feb. 3, 2015) (citing *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983)). "Federal courts 'must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]'" *Id.* (citing *Brimmage v. Sumner,* 793 F.2d 1014, 1015 (6th Cir. 1986); *White v. Howes*, 586 F.3d 1025, 1028 (6th Cir. 2009); *Galvan v. Prelesnik*, No. 13–1695, 2014 WL 4958078 (6th Cir. Oct. 3, 2014)).

> [I]n deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland*, 273 Fed. Appx. 480, 486-87 (6th Cir. 2008). Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

*Lumpkin v. Romanowski*, No. 5:08-CV-10304, 2010 WL 1222691, at *6 (E.D. Mich. March 25, 2010). The state courts have determined that the Ohio legislature intended cumulative punishment for a person convicted as an aider and abettor. O.R.C. § 2923.03(A)(2), Ohio's complicity statute, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall. . . Aid or abet another in committing the offense[.]" The statute further explicitly indicates that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." O.R.C. § 2923.03(F). "Because this determination is binding in federal habeas corpus, petitioner's double jeopardy claim lacks merit." *Lumpkin v. Romanowski*, 2010 WL 1222691, at *6 (citing *Rodgers v. Bock*, 49 F. App'x 596, 597 (6th Cir. 2002); *Palmer v. Haviland,* 273 F. App'x 480, 487 (6th Cir. 2008).

Petitioner therefore has failed to establish the denial of the effective assistance of appellate counsel.

Claim three is without merit.

**IV.**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED.**  This action is hereby **DISMISSED**.

        **IT IS SO ORDERED**.

  /s/  GREGORY L. FROST  
GREGORY L. FROST  
United States District Judge
